UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CASSO'S WELLNESS STORE & GYM, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 17-2161 |
| SPECTRUM LABORATORY PRODUCTS, INC. | SECTION "N" (2) |

### ORDER & REASONS

Before the Court is a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) filed by the defendant, Spectrum Laboratory Products, Inc. ("Spectrum" or "Defendant").[1] (Rec. Doc. 13). Plaintiff Casso's Wellness Store and Gym, LLC ("Casso" or "Plaintiff") opposes the Motion. (Rec. Doc. 20). Spectrum filed a reply in support of its Motion (Rec. Doc. 26), which was followed by Casso's sur-reply (Rec. Doc. 32). Now, having considered the extensive submissions of the parties, the record, and the applicable law, the Court **DENIES** the Motion to Dismiss for Lack of Subject Matter Jurisdiction for the reasons stated herein.

### I. BACKGROUND

Casso's Wellness Store and Gym, LLC ("Casso" or "Plaintiff") filed a putative class action suit against Spectrum Laboratory Products, Inc. ("Spectrum" or "Defendant") under the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Protection Act of 2005 ("JFPA"), seeking to recover damages for and to enjoin Spectrum's massive junk faxing

---

[1] Spectrum concurrently filed an alternative motion to dismiss and/or strike class allegations. (Rec. Doc. 15).

campaign.² (Rec. Doc. 1, as amended by Rec. Doc. 9). In its Complaint, Casso defines the "Plaintiff Class" to include:

> [A]ll persons and entities that are subscribers of telephone numbers to which within four years of the filing of this Complaint, Defendant sent facsimile transmissions with content that discusses, describes, promotes products and/or services offered by Defendant, and does not contain the opt-out notice required by 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2) or 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

(Rec. Doc.1 at p. 6).

Casso alleges that Spectrum violated the TCPA and the regulations promulgated under the Act by the Federal Communications Commission ("FCC") by "blasting thousands of [unsolicited] junk faxes nationwide" to advertise their goods and/or services. (Rec. Doc. 1 at p. 4). "Plaintiff further alleges that Defendant has blasted junk faxes without complying with the Opt-Out Notice Requirements, in direct violation of the TCPA, JFPA and the FCC's regulations." (*Id.*). Casso identifies Spectrum's alleged violations of the Act as including, but not limited to, the unsolicited facsimile advertisements sent to Casso's facsimile telephone number on December 21, 2016; February 14, 2017; February 17, 2017; and February 24, 2017.³ (*Id.* at p. 9).

Casso alleges that it has suffered the following damages as a result of Spectrum's unsolicited faxes:

> Defendant has imposed disruption, annoyance and cost on Plaintiff. Among other things, these faxes tie up Plaintiff's telephone lines and facsimile machines, misappropriate and convert Plaintiff's fax paper and toner, require Plaintiff to sort through faxes to separate legitimate fax communications from junk fax advertisements and to discard the latter.

---

² Casso filed a First Amended Class Action Complaint on June 5, 2017. (Rec. Doc. 9).
³ Plaintiff attached the challenged faxes to the Complaint.

(Rec. Doc. 1 at p. 5). Additionally, Casso claims to have "suffered an injury in that it has also been deprived of its right, created by Congress, to receive the required opt-out notice disclosures on facsimile advertisements governed by the TCPA." (*Id.* at p. 6). Casso, on behalf of itself and members of the purported class, seeks the issuance of a permanent injunction, as well as damages in the amount of $500 for each violation of the TCPA by Defendant, and trebled statutory damages for violations Defendant committed "willfully or knowingly." (*Id.* at pp. 10-11).

On July 31, 2017, Spectrum filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), alleging that the Court lacks subject matter jurisdiction because Casso lacks standing to sue. (Rec. Doc. 13-1 at p. 11). Specifically, Spectrum contends that Casso's claim involves "a strictly statutory violation (the alleged failure to include a complaint opt-out notice), not a concrete injury sufficient to satisfy Article III standing requirements." (*Id.* at p. 2). Spectrum argues that, in addition to failing to allege a sufficient injury in fact, Casso has also failed to show that the injury is traceable to the alleged TCPA violation. (*Id.* at p. 15). Spectrum further contends that the "safe-harbor exception" applies because the parties had an "established business relationship ("EBR")." (*See id.* at p. 17). Moreover, Spectrum moves for dismissal because it claims it sufficiently complied with the opt-out notice requirements by including the following language on the referenced faxes: "*To unsubscribe please call us at 800.370.6231 or fax this special back to us with your fax number at 800.901.5518.*" (*Id.* at p. 14).

In its opposition, Casso contends that (1) the EBR defense fails as a matter of law because Casso has "never done any business with, voluntarily communicated with, or in any way asked to receive correspondence of any type from Spectrum;" and (2) even if the EBR defense applies, Spectrum's unsolicited facsimile advertisements do not comply with the TCPA's requirements for

3

a valid opt-out notice. (*See* Rec. Doc. 20 at pp. 2-3). Further, Casso asserts that substantial compliance with the opt-out requirements is inadequate and not a defense to a violation of the TCPA. (*Id.* at p. 8). Next, Casso asserts that both of its claims—that Spectrum's junk fax campaign violates the TCPA because the faxes are unsolicited *and* fails to contain the statutorily-mandated opt-out language—confer Article III standing. (*Id.* at p. 4). Casso states that Paragraph 16 of its Complaint identifies the actual, concrete harm Casso suffered by being a target of Spectrum's junk fax campaign. (*Id.* at p. 11). Moreover, Casso argues that "courts have found, in the wake of *Spokeo*, that receipt of unsolicited fax advertisements satisfies Article III standing under the TCPA." (*Id.* at p. 13).

In reply, Spectrum reiterates the applicability of the EBR safe-harbor defense and that substantial compliance with the opt-out requirements is sufficient. (Rec. Doc. 26 at p. 2). Spectrum claims the parties had an established business relationship based on prior business dealings between Spectrum and OncologyRX, LLC, a company formerly owned by Mike Casso (also the owner of Casso's Wellness Store & Gym, LLC). (*Id.* at p. 3). Spectrum argues that this relationship applies to Casso's Wellness Store & Gym, LLC because both companies were owned by Mike Casso and Mike Casso chose to utilize the same fax number for his subsequent company. (*Id.*) Moreover, Spectrum argues that the language included on its faxes "conveys the essence of the required information" and that at least one court has deemed substantial compliance satisfactory as a defense. (*Id.* at pp. 4-5). Spectrum asserts that the applicability of the EBR defense strips Casso of a concrete injury sufficient under Article III: because the faxes fall under the EBR exception, "the only possible violation Casso's can allege is not that it received faxes without basis…but that the opt-out notices were not fully compliant." (*Id.* at pp. 5-8).

<mark>4</mark>

Casso filed a sur-reply, arguing that *Landsman & Funk, P.C. v. Lorman Business Center, Inc.*, 2009 WL 602019 (W.D. Wis. Mar. 9, 2009), cited by Spectrum in support of its substantial compliance argument, is distinguishable because (1) the opt-out language at issue in *Landsman* contained all of the required information and (2) the plaintiff provided express permission for the defendant to send fax advertisements. (Rec. Doc. 32 at pp. 1-2). Instead, Casso asserts that Spectrum's opt-out language is "almost identical" to the opt-out language contained in *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F.Supp 2d 272 (S.D. NY. 2013), and is "woefully deficient" as it does not convey the essence of the required information, specifically, it fails to satisfy "64.1200(a)(4)(iii)(B), (C)." (*Id.* at pp. 3-4).

## II. LAW AND ANALYSIS

### a. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) provides for the dismissal of an action upon a finding by the court that it does not have subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of demonstrating that jurisdiction exists. *Dow v. Agrosciences, LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003). "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).

### b. Standing

It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case. In the absence of standing, there is no "case or controversy" between the plaintiff and defendant which serves as the basis for the exercise of judicial power under Article III of the constitution. *Warth v. Seldin*, 422 U.S. 490, 498-99, 95 S. Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). The key question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant federal court jurisdiction. *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L.Ed.2d 663 (1962). In ruling on a motion to dismiss for lack of standing, courts must accept as true all material allegations of the Complaint, and must construe the Complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

A plaintiff invoking federal jurisdiction bears the burden of establishing the "irreducible constitutional minimum of standing," which consists of three elements: "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiff's failure to establish any one element deprives the federal courts of jurisdiction to hear the suit. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

Here, the parties dispute whether Casso has sufficiently pled a concrete injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 136 S. Ct. at 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). "A 'concrete'

injury must be '*de facto*'; that is, it must actually exist." *Spokeo,* 136 S. Ct. at 1548. Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan*, 504 U.S. at 578. However, even in the context of a statutory violation, "Article III standing requires a concrete injury." *Spokeo*, 136 S. Ct. at 1549. In some circumstances, "the violation of a procedural right granted by statute can be sufficient…to constitute injury in fact," such that "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.*

### c. Telephone Consumer Protection Act

The Telephone Consumer Protection Act ("TCPA"), enacted by Congress in 1991 and amended by the Junk Fax Prevention Act of 2005, prohibits the transmission of *unsolicited* advertisements[4] via telephone facsimile machine, computer, or other device. 47 U.S.C. § 227(b)(1)(C) (emphasis added). In enacting the TCPA, "Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarking phone calls and fax advertisements." *Van Patten v. Vertical Fitness Grp*., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing Telephone Consumer Protection Act of 1991, Pub. L. 102-243, § 2, ¶ 12). The TCPA provides a private right of action, which permits any "person or entity" to bring an action seeking (i) to enjoin a violation of the TCPA; (ii) to recover actual monetary loss from such violation or to receive statutory damages of $500 per violation, whichever is greater; or (iii) to pursue both injunctive or monetary relief. 47 U.S.C. § 227(b)(3).

---

[4] The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, good, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

Additionally, the TCPA, requires senders to include specific opt-out notices on all unsolicited fax advertisements. *See* 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 CFR § 64.1200(a)(4)(iii)-(vii). An unsolicited fax advertisement violates the TCPA unless the sender can establish three things: (i) the sender has an "established business relationship"[5] with the recipient; (ii) the sender obtained the recipient's fax number either through "voluntary communication with the recipient in the context of the established business relationship" or the recipient voluntarily made his number available in "a directory, advertisement, or site on the Internet;" and (iii) the unsolicited advertisement contains a compliant opt-out notice (hereinafter "EBR defense"). 47 U.S.C. § 227(b)(1)(C). In order for an opt-out notice to be compliant it must:

(1) Be clear and conspicuous and on the first page of the unsolicited advertisement;
(2) State the recipient may opt out of future unsolicited advertisements;
(3) Note that a failure by the sender to comply with a proper opt-out request within 30 days is unlawful;
(4) Include a domestic contact number and fax number for the recipient to send an opt-out request;
(5) Include a cost-free mechanism to send an opt-out request; and
(6) Instruct the recipient that an opt-out request is valid only if the recipient (i) sends the request to the number the sender identified in the notice; (ii) identifies the fax number to which the opt-out request relates; and (iii) does not expressly invite fax advertisements thereafter.

*See* 47 U.S.C. § 227(b)(2)(D), (E); 47 C.F.R. § 64.1200(a)(4)(iii), (v). Failure to comply with the opt-out requirements is an independent violation of the TCPA and precludes a defendant from asserting an EBR defense. *See* 47 U.S.C. § 227(b)(3), (b)(1)(C)(i-iii).

---

[5] The FCC has defined "established business relationship" as:
    [A] prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.
47 C.F.R. § 64.1200(f)(5); 47 U.S.C. § 227(a)(2).

### d. Analysis

Applying these standards, the Court concludes that Casso has sufficiently alleged an injury in fact to establish standing. Contrary to Defendant's assertions, *Spokeo* does not preclude a finding of standing in the instant case. As Casso points out, the overwhelming number of courts that have addressed standing in TCPA cases post-*Spokeo* have found standing. (*See* Rec. Doc. 20 at p. 14) (citing various district court decisions). Specifically, courts subsequent to *Spokeo*, have repeatedly held that allegations of wasted time in reviewing unsolicited fax advertisements and the use of paper and ink toner in printing those advertisements constitute concrete injuries as required to have Article III standing under the TCPA and the JFPA. *See, e.g., Kostmayer Construction, LLC v. Port Pipe & Tube, Inc.,* No. 16-1012, 2017 WL 5079181 (W.D. La. Nov. 1, 2017) (collecting cases); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015); *Sandusky Wellness Ctr., LLC v. MedTox Scientific, Inc.*, 250 F. Supp. 3d 354, (D. Minn. 2017); *Fauley v. Drug Depot, Inc.*, 204 F. Supp. 3d 1008 (N.D. Ill. 2016). Moreover, courts have concluded that the receipt of an impermissible fax advertisement is a sufficient concrete and particularized injury to establish standing to bring a TCPA claim. *See, e.g., Van Patten v. Vertical Fitness Group, LLC,* 847 F.3d 1037, 1043 (9th Cir. 2017); *Rogers v. Capital One Bank (USA), N.A.,* 190 F. Supp. 3d 1144, 1147 (N.D. Ga. 2016); *Progressive Health & Rehab Corp. v. Strategy Anesthesia, LLC*, --- F. Supp. 3d ---, No. 16-1151, 2017 WL 4277200 (S.D. Ohio Sept. 25, 2017).

Courts in this district have similarly found that the occupation of plaintiff's fax machines, and wasted time, toner, and paper to be sufficient TCPA-related injuries to meet the Article III standing requirements. *See Fairway Med. Ctr. LLC v. McGowan Enters., Inc.*, No. 16-3782, 2017 WL 1423883 (E.D. La. Jan. 25, 2017) (J. Fallon); *Sartin v. EKF Diagnostics, Inc.*, No. 16-1816, 2016 WL 7450471 (E.D. La. Dec. 28, 2016) (J. Vance). In *Sartin v. EKF Diagnostics, Inc.*, Judge

Vance denied defendants' motion to dismiss for lack of Article III standing, finding that plaintiff had sufficiently alleged "judicially cognizable injuries" that are traceable to defendant's violation of the TCPA: "Dr. Sartin's alleged injuries [wasted time and the tying up of his fax line] are of the type that the TCPA sought to redress, and Congressional judgment supports finding that these alleged injuries satisfy Article III requirements." *Sartin*, 2016 WL 7450471, at *4.

This Court joins the various circuit and district courts in finding that Casso has alleged a concrete and particularized injury sufficient to meet the Article III standing requirements. Casso alleged that Spectrum violated the TCPA by sending fax advertisements that were unsolicited *and* failed to contain the statutorily-mandated opt-out language. In addition to alleging TCPA procedural violations, Casso specifically alleged additional, real harm, it suffered as a result of receiving Spectrum's unsolicited faxes, including disruption, annoyance, cost, the loss of use of their telephone lines and fax machine during receipt of the unsolicited faxes, misappropriation of fax paper and toner, and loss of time to sort faxes. (Rec. Doc. 1 at p. 5). Consequently, Casso has sufficiently alleged a concrete injury in fact, which satisfies Article III standing.

Additionally, the Court rejects Spectrum's argument that the established business relationship defense warrants dismissal in this case. Even construing Spectrum's argument as a 12(b)(6) motion, the Court finds that dismissal at this stage in the proceedings would be improper as Spectrum did not meet its burden of proving the applicability of the EBR defense. Casso adamantly contests Spectrum's assertion that it had an established business relationship with Casso through Oncology RX, LLC: "Casso has never done any business with, voluntarily communicated with, or in any way asked to receive correspondence of any type from Spectrum." (Rec. Doc. 20 at p. 2). Whether Spectrum can show that it had an established business relationship with Casso,

that its faxes contained valid opt-out notices, or that it otherwise satisfies the requirements of Section 227(b)(1)(C) are issues of merit, not of standing. Resolution of these issues involve a fact-intensive inquiry that is not suitable for this motion. Accordingly, at this time, absent further discovery and briefing, the Court does not find that Defendant falls under the exception provided by 47 U.S.C. § 227(b)(1)(C).

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Spectrum's Rule 12(b)(1) Motion to Dismiss for lack of Subject Matter Jurisdiction (Rec. Doc. 13) is **DENIED.**

New Orleans, Louisiana, this 5th day of February 2018.

						_____
						**KURT D. ENGELHARDT**
						**United States District Judge**