UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CASSO'S WELLNESS STORE & GYM, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 17-2161 |
| SPECTRUM LABORATORY PRODUCTS, INC. | SECTION "N" (2) |

## ORDER & REASONS

Presently before the Court is Defendant Spectrum Laboratory Products, Inc.'s ("Spectrum" or "Defendant") Alternative Motion to Dismiss and/or Strike Class Allegations for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), as inappropriate for class treatment under Fed. R. Civ. P. 23(c)(1)(A) and 23(d)(1)(D), and as unconstitutional under the due process clause of the Fifth Amendment. (Rec. Doc. 15). Plaintiff Casso's Wellness Store and Gym, LLC ("Casso" or "Plaintiff") opposes the Motion. (Rec. Doc. 21). Both parties filed numerous additional supporting and reply memoranda. (Rec. Docs. 28, 32, 35, 39, 42, and 45). Having considered the extensive submissions of the parties, the record, and the applicable law, the Court **DENIES** the Motion to Dismiss and/or Strike Class Allegations for the reasons stated herein.

### I.   BACKGROUND

On March 15, 2017, Casso filed its original putative-class action Complaint against Spectrum under the Telephone Consumer Protection Act of 1991 ("TCPA"),[1] as amended by the Junk Fax Protection Act of 2005 ("JFPA"), seeking to recover damages for and to enjoin Spectrum's massive junk faxing campaign. (Rec. Doc. 1, as amended by Rec. Doc. 9). Spectrum

---

[1] The TCPA permits any "person or entity" to bring a private action seeking (i) to enjoin a violation of the TCPA; (ii) to recover actual monetary loss from such violation or to receive statutory damages of $500 per violation, whichever is greater; or (iii) to pursue both injunctive and monetary relief. 47 U.S.C. § 227(b)(3).

is a California corporation and a supplier of compounding chemicals, supplies, and equipment, with its principal place of business in New Brunswick, New Jersey. (Rec. Doc. 15-1 at p. 5). Casso alleges that Spectrum violated the TCPA and the regulations promulgated under the Act by the Federal Communications Commission ("FCC") by sending unsolicited facsimiles to advertise their goods and/or services to Plaintiff and members of the Plaintiff Class. (Rec. Doc. 1 at p. 9). Plaintiff further alleges that Defendant blasted junk faxes without complying with the mandatory Opt-Out Notice Requirements, in direct violation of the TCPA, JFPA, and the FCC's regulations. (*Id.* at p. 10). Casso identifies Spectrum's alleged violations of the Act as including, but not limited to, the unsolicited facsimile advertisements sent to Casso's facsimile telephone number on December 21, 2016; February 14, 2017; February 17, 2017; and February 24, 2017.[2] (*Id.* at p. 9).

Casso purports to bring a class action on behalf of a "Plaintiff Class" that includes:

[A]ll persons and entities that are subscribers of telephone numbers to which within four years of filing of the Complaint, Defendant sent facsimile transmission with content that discusses, describes, promotes products and/or services offered by Defendant, and does not contain the opt-out notice required by 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2) or 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

(Rec. Doc. 1 at p. 6). Casso, on behalf of itself and members of the purported class, seeks the issuance of a permanent injunction, as well as damages in the amount of $500 for each violation of the TCPA by Defendant, and trebled statutory damages for violations Defendant committed "willfully or knowingly." (*Id.* at pp. 10-11). Casso contends that this action is properly maintainable as a class action under authority of Federal Rule of Civil Procedure 23 and that a

---

[2] Plaintiff attached the challenged faxes to the Complaint.

class action is the superior method for the fair and efficient adjudication of the controversy. (Rec. Doc. 1 at pp. 6-9).

Spectrum filed the present Alternative Motion to Dismiss and/or Strike Class Allegations for (1) lack of personal jurisdiction, (2) as inappropriate for class treatment, and (3) as unconstitutional. (Rec. Doc. 15). First, Spectrum contends that the Court lacks general personal jurisdiction over Spectrum—a California corporation with its principal place of business in New Jersey—because it does not have pervasive contacts with Louisiana. (Rec. Doc. 15-1 at pp. 10-12). Relying on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*[3] ("*Bristol-Myers*"), Spectrum also argues that specific jurisdiction does not exist over Spectrum with respect to the claims of non-Louisiana putative plaintiffs because their claims involve "faxes [received] from Spectrum in other states in violation of the TCPA [and] will not have arisen as a result of any conduct by Spectrum in Louisiana." (*Id.* at p. 14). Thus, Spectrum argues that "Casso's class allegation claims should be dismissed and/or stricken." (*Id.*).

Next, Spectrum moves to strike Casso's class allegations asserting that Casso cannot meet the threshold requirements of class certification under Federal Rule of Civil Procedure 23. (*Id.* at p. 14). Particularly, Spectrum argues that Casso's "allegations undoubtedly fail the typicality and adequacy of representation" requirements because Casso's claims "will require unique proof" and "are subject to unique defenses." (*Id.* at pp. 16-19). Finally, Spectrum moves for dismissal of the class allegations, arguing that "pursuit of alleged TCPA violations via a class action violates the

---

[3] 137 S. Ct. 1773 (2017).

due process clause," essentially because compounding the TCPA's statutory damages in a class action is unreasonable and disproportionate to the underlying offense. (*Id.* at pp. 19-25).

In its opposition, Casso counters that, analogous to *Neur v. Dental Resource Systems, Inc.*,[4] Spectrum is subject to specific personal jurisdiction[5] and that this Court may adjudicate the claims of all absent class members, claiming: "(1) Spectrum purposefully directed its illegal advertising activities in Louisiana; and (2) the claims arise out of or relate to Spectrum's illegal advertising in Louisiana." (Rec. Doc. 21 at p. 6). Casso further argues that this Court's exercise of specific personal jurisdiction comports with fair play and substantial justice:

> (1) *Burden on defendant*: it is not unreasonable to ask a defendant to defend in Louisiana, where the company avails itself of the benefit of that Louisiana's market for its products. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 474 (5th Cir. 2006). Additionally, once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant. See *Asah Metal Industry Co., Ltd v. Superior Court of California, Solano County*, 480 U.S. 102, 115, 107 S.Ct. 1026 (1987). (2) *The forum state's interest in resolving the dispute*: where a product allegedly causes economic injury in Louisiana, it is in the interest of that state to have its courts mediate the dispute. *Id.* (3) P*laintiff's interest in receiving convenient and effective relief*: Louisiana and the plaintiff (Casso's, which is organized under Louisiana law and based there) obviously have some legitimate interest in litigating this matter in Louisiana, where the offending conduct has regularly occurred. *Id.* (4) *The interstate judicial system's interest in obtaining the most efficient resolution of controversies*: The Fifth Circuit has stated that the "judicial system has a strong interest in resolving related, consolidated claims against a defendant." Clearly, the resolution of TCPA violations via a class action device is an efficient method to resolve related, consolidated claims against Spectrum. (5) *The shared interest of the several states in furthering fundamental substantive social policies*: this case seeks class wide relief for violations of a federal statute intended to protect consumers nationwide from abusive illegal advertising practices. Accordingly, litigating these violations of federal law in a federal court will only serve to further *the several states' shared interest in fundamental substantive social policies*.

---

[4] No. 14-2319, 2015 WL 4634044 (D. Kan. July 27, 2015).
[5] Casso concedes that Spectrum has insufficient contacts to subject it to the general personal jurisdiction of this Court. (*See* Rec. Doc. 21 at p. 6).

4

(*Id.* at pp. 6-7). Next, Casso argues that the instant case is distinguishable from *Bristol-Myers* because (1) this matter is not being adjudicated in a Louisiana state court; (2) none of the non-resident plaintiffs are asserting state law causes of action; (3) "the claims asserted by the Plaintiff on behalf of a nationwide class arise under the laws of the United States and the action was originally filed and remains in federal district court pursuant to 28 U.S.C. § 1331 federal question jurisdiction;" and (4) the absent class members claims "arise from the exact same course of conduct and transaction as do the claims of the resident named Plaintiff, i.e., Spectrum's illegal fax blast advertising." (*Id.* at p. 8). Accordingly, Casso maintains that the holding in *Bristol-Myers* is inapplicable to a nationwide class action arising under the TCPA. (*Id.* at p. 9).

Next, Casso argues for denial of Spectrum's motion to strike class allegations at this stage in the litigation, stating that "nearly every court presented with a motion to strike class allegations prior to discovery in a case arising under violations under the TCPA, has denied the motion." (*Id.* at p. 11) (collecting cases). Casso contends that violations of the TCPA are amenable to class wide resolution and that its claims satisfy the requirements of Fed. R. Civ. P. 23. (*Id.* at pp. 10-20). Finally, Casso rejects Spectrum's argument that aggregation of the TCPA's statutory damages in a class action violates the Fifth Amendment's Due Process Clause, claiming that the argument is "neither novel nor new." (*Id.* at p. 20).

Finally, in the subsequent, numerous reply memoranda, parties proffered cases that have analyzed and applied *Bristol-Myers*. In support of its argument that *Bristol-Myers* is inapplicable to this case and other class actions, Casso cites *Jackie Fitzhenry-Russel v. Dr. Pepper Snapple Grp, Inc.*, No. 17-00564, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017); and *In Re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-02047, 2017 WL 5971622 (E.D. La. Nov. 30,

2017). Conversely, Spectrum cites *In re Dental Supplies Antitrust Litig.*, No. 16-696, 2017 WL 4217115 (E.D. N.Y. Sept. 20, 2017); and *McDonnell v. Nature's Way Prods. LLC*, No. 16-5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) in support of its argument that *Bristol-Myers* is controlling precedent for the instant case.

## II. LAW AND ANALYSIS

### a. Personal Jurisdiction

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a *prima facie* showing. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). In its jurisdictional determination, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The Court "must resolve all undisputed facts submitted by the plaintiff, as well as facts contested in the affidavits, in favor of jurisdiction." *Luv N' care*, 438 F.3d at 469. "When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Id.* at 473 (citation omitted).

Because Casso's claim is based on the TCPA, which does not provide for nationwide service of process, and Louisiana's long-arm statute extends personal jurisdiction to the full limits of the due process clause, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *See Aviles v. Kunkle*, 978 F.2d 201, 203-04 (5th Cir. 1992); *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 583 (S.D. Ohio 2016); La. Rev. Stat. § 13:3201(B). Due process is satisfied when (1) the defendant has purposefully availed

itself of the benefits and protections of the forum by establishing "minimum contacts" with that state, and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" inquiry involves a determination of whether the defendant purposely directed his activities towards the forum state, such that he could reasonably anticipate being haled into court in that state. *Luv N' care,* 438 F.3d at 469-70 (citing *World Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Minimum contacts may give rise either to "specific" personal jurisdiction or "general" personal jurisdiction. *See Bristol-Myers*, 137 S. Ct. at 1780. The Court declines to address general jurisdiction because Casso only contends that the Court has specific jurisdiction over Spectrum. A court has specific personal jurisdiction over a nonresident defendant when the litigation arises from the defendant's minimum contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Fifth Circuit consolidated the specific jurisdiction inquiry into a three-part analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Luv N' care*, 438 F.3d at 469 (internal citations omitted). Because there must be an affiliation between the forum and the underlying controversy, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1780 (2017).

7

The gravamen of the parties' personal jurisdiction dispute is the applicability of the Supreme Court's holding in *Bristol-Myers* to the instant case.[6] In *Bristol-Myers*, more than 600 consumers[7] filed a products liability action in a California state court against Bristol-Myers Squibb Company—a company incorporated in Delaware and headquartered in New York—asserting various state-law claims based on injuries allegedly caused by the pharmaceutical company's drug Plavix. *Bristol-Myers*, 137 S. Ct. at 1777. Applying "settled" specific jurisdiction principles, the Supreme Court ultimately held that California lacked specific personal jurisdiction over nonresident consumers' claims: the Court reasoned that because the nonresidents were not prescribed, did not purchase, did not ingest, nor get injured by Plavix in California, there was no "connection between the forum and the specific claims at issue." *Id.* at 1781.

The Court stated that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California–and allegedly sustained the same injuries as did the nonresidents– does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id*. Notably, however, the Court recognized that its decision concerned the due process limits on the exercise of personal jurisdiction by a State, and specifically left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784.

The Court is not persuaded that *Bristol-Myers* bars this Court's exercise of specific jurisdiction over Spectrum in the instant case. Indeed, Justice Sotomayor recognized that the

---

[6] Parties concede and the Court agrees that the particular issue before this Court was not addressed by the Supreme Court in *Bristol-Myers*.
[7] Most of the plaintiffs were not California residents: 86 were California residents and 592 were residents from 33 other states. *Bristol-Myers*, 137 S. Ct. at 1778.

8

majority in *Bristol-Myers* did not address the precise issue before this Court: whether the opinion in *Bristol-Myers* "also appl[ies] to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." 137 S. Ct. 1789 n. 4 (Sotomayor, J., dissenting). Courts, including a court in the Eastern District of Louisiana, have declined to extend the holding in *Bristol-Myers* to class actions. *See, e.g., In re Chinese-Manufactured Drywall Prods. Liability Litig.*, No. 09-2047, 2017 WL 5971622, at *21 (E.D. La. Nov. 30, 2017) (concluding that *Bristol-Myers* does not apply to federal class actions based on, *inter alia*, the significant differences between class actions and mass tort actions and the lack of federalism concerns in federal court); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-00564, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) (rejecting the argument that *Bristol-Myers* precludes a court from exercising personal jurisdiction over the claims of absent, non-California resident class members, reasoning that *Bristol-Myers* is "meaningfully distinguishable" from putative class actions); *Swamy v. Title Source, Inc.*, No. 17-01175, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) (finding that "*Bristol-Myers* does not apply to divest courts of personal jurisdiction in FLSA collective actions," which are distinguishable because they involve federal claims created by Congress); *but see DeBernardis v. NBTY, Inc.*, No. 17-6125, 2018 WL 461228, at *1 (N.D. Ill. Jan. 18, 2018) (recognizing the split among district courts regarding the applicability of *Bristol-Myers* to nationwide class action cases).

The court finds that the material differences between mass tort actions and class actions further support the finding that *Bristol-Myers* is inapplicable to the instant case, a purported class action invoking federal question subject matter jurisdiction. Unlike *Bristol-Myers*, which involved a mass tort action where each plaintiff was a named plaintiff, in a putative class action, the plaintiff

9

seeking to represent the class is the only plaintiff named in the complaint, and his claims—not the unnamed non-resident members—are relevant to the personal jurisdiction inquiry. *See Fitzhenry-Russell*, 2017 WL 4224723, at *5; *see also Sanchez v. Launch Technical Workforce Solutions, LLC*, ---F. Supp. 3d---, No. 17-01904, 2018 WL 942963 (N.D. Ga. Feb. 14, 2018) (collecting cases holding that "non-resident members of a plaintiff class will not detract from a named plaintiff's ability to establish specific personal jurisdiction over the defendant on behalf of the class"); *Swamy*, 2017 WL 5196780, at * 2 (finding that the court had personal jurisdiction over the defendant as to the claims in a FLSA collective action by virtue of the specific jurisdiction established by the sole named plaintiff's claims); *Ambriz v. Coca Cola Co.*, No. 13-3539, 2014 WL 296159 (N.D. Cal. Jan. 27, 2014) (concluding "that a defendant's contacts with the named plaintiff in a class action, without reference to the defendant's contacts with unnamed members of the proposed class, must be sufficient [i.e., arise out of or result from the defendant's forum-related activities] for the court to exercise personal jurisdiction"). Furthermore, class actions can be contrasted from mass tort actions because of the additional due process safeguards for class certification under Federal Rule of Civil Procedure 23. *In re Chinese-Manufactured Drywall*, 2017 WL 5971622, at *14. Thus, the Court does not construe *Bristol-Myers* as barring its exercise of jurisdiction over the purported nonresident plaintiffs' claims in the instant putative class action.

Importantly, the Court notes that the parties do not dispute the reasonableness of the Court's exercise of specific jurisdiction over Casso's claims.[8] Rather, the parties' fundamental disagreement is whether *Bristol-Myers* prevents the exercise of specific jurisdiction over Spectrum

---

[8] *See* Spectrum's Motion to Dismiss, Rec. Doc. 15-1 at p. 12 ("Here, while this Court may exercise specific jurisdiction over claims brought by Casso's [based on the alleged receipt of four faxes from Spectrum] and potentially other Louisiana plaintiffs who reside in and allegedly received faxes from Spectrum in Louisiana, specific jurisdiction does not exist over claims of non-Louisiana putative plaintiffs….").

in a nationwide putative class action.[9] The Court finds that it does not. Moreover, Casso satisfied its burden of showing that specific personal jurisdiction exists over Spectrum with regards to its TCPA claims: (1) Spectrum purposefully directed its activities into Louisiana by allegedly transmitting TCPA-prohibited fax advertisements to Casso, a Louisiana Company with a Louisiana fax number;[10] and (2) the named plaintiff was injured in Louisiana by receipt of the four referenced unsolicited faxes, which plaintiff claims resulted in disruption, annoyance, cost, occupation of the telephone line and fax machine, misappropriation of paper and toner, and wasted time. (*See* Rec. Doc. 1).

Courts have repeatedly held that sending a message or fax advertisement into the forum state in violation of the TCPA, the conduct giving rise to the litigation, is sufficient to confer specific jurisdiction over the defendant. *See, e.g., Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1369 (S.D. Fla. 2016); *Luna v. Shac, LLC*, No. 14-00607, 2014 WL 3421514, at *3-4 (N.D. Cal. July 14, 2014) (collecting cases); *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, No. 13-01347, 2014 WL 12103245, at * 3 (W.D. Wash. Nov. 4, 2014); *j2 Global Communications, Inc., v. Blue Jay, Inc.*, No. 08-4254, 2009 WL 29905, at *10 (N.D. Cal. Jan. 5, 2009). Drawing inferences in Plaintiff's favor, the Court finds that Spectrum's alleged sending of prohibited faxes to Casso's Louisiana fax number, which is the focus of this TCPA litigation, is sufficient to establish a *prima facie* case for specific personal jurisdiction.

---

[9] *See* Spectrum Reply Memorandum, Rec. Doc. 45 at p. 2 ("The issue at hand is whether, in the absence of general or specific jurisdiction, this Honorable Court can maintain a class action over nonresident putative plaintiffs.").
[10] Casso's fax number, which is reflected on the faxes Casso attached as exhibits to its Complaint, is (504) 888-0782, an area code that is associated with Louisiana. (*See* Rec. Doc. 1-1).

Considering the third and final prong of the specific jurisdiction analysis, the Court's exercise of personal jurisdiction over Spectrum appears reasonable. (*See* Casso's Opposition, Rec Doc. 21 at pp. 6-7). Spectrum did not make a compelling case that the exercise of personal jurisdiction over it would be unreasonable; to the contrary, Spectrum did not contest the reasonableness of exercising specific personal jurisdiction over Casso's claims. Instead, Spectrum limited its objection to the Court exercising jurisdiction over the unnamed, nonresident plaintiffs' claims. Consequently, Spectrum is reasonably subject to the personal jurisdiction of this Court.

### b. Class Allegations Under Federal Rule of Civil Procedure 23

Next, Spectrum moves the Court to strike Casso's class allegations for failure to satisfy the class certification requirements under Rule 23 of the Federal Rules of Civil Procedure. The Court finds that Spectrum's argument challenging the appropriateness of Casso's class allegations is premature: Spectrum has not answered the Complaint, discovery has not commenced, and a motion for class certification has not been filed. *See Pinero v. Jackson Hewitt Tax Serv., Inc.*, 638 F. Supp. 632, 641 (E.D. La. 2009) (Vance, J.) (denying defendants' motion to strike class allegations as premature: defendants had not answered plaintiff's complaint and discovery had been stayed, thus the Court did not have enough evidence to determine the appropriateness of plaintiff's claims); *see also Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009) (noting that courts disfavor motions to strike class allegations because issues related to class allegations are generally more appropriately resolved on a motion for class certification); *Delarue v. State Farm Lloyds*, No. 09-237, 2010 WL 11530499, at *3 (E.D. Tex. Mar. 10, 2010) (citing cases indicating that motions to strike class allegations are disfavored before discovery and are often denied early in the litigation as premature).

At this time, on the record as it exists today, the Court cannot adequately ascertain whether Casso's class claims are appropriate under Fed. R. Civ. P. 23. Furthermore, "violations of § 227(b)(1)(C) of the TCPA are not *per se* unsuitable for class resolution." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008). Thus, although the Court questions Casso's ability to satisfy the class certification requirements, especially in light of *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017), the Court finds that dismissing the class allegations this early in the litigation would be premature. Accordingly, Spectrum's motion to strike the class allegations as inappropriate for class treatment is **DENIED WITHOUT PREJUDICE**.

### c. Due Process

Finally, the Court is equally unpersuaded by Spectrum's contention that class action treatment of TCPA claims violates the Due Process Clause of the Fifth Amendment. Again, this Court finds the argument premature, and reiterates that numerous courts have found TCPA cases to be uniquely well-suited to class resolution. Moreover, the argument that TCPA class actions are violative of the Fifth Amendment has, indeed, been persuasively rejected. *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1164-67 (S.D. Ind. 1997).

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Spectrum Laboratory Products, Inc.'s Alternative Motion to Dismiss and/or Strike Class Allegations is **DENIED**.

New Orleans, Louisiana, this <u>19th</u> day of March 2018.

**KURT D. ENGELHARDT**
**United States District Judge**